UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REYNALDO ERIC ABDALA BELISARIO (A#200-010-372),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-04580-DJC-SCR

ORDER AND

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a native and citizen of Cuba who entered the United States lawfully in July 2006. ECF No. 1 at 6; ECF No. 7-2 at 1. On February 29, 2008, he became a lawful permanent resident ("LPR") of the United States, retroactive to his date of admission. ECF No. 7-2 at 1. Petitioner was convicted of cocaine possession on April 17, 2013, which was a third-degree felony under Florida law. ECF No. 7-3 at 6 (Rap Sheet). He was sentenced to one day of probation which he completed on the same day as sentencing. Id.

Over ten years later, on May 22, 2023, after a trip abroad, he applied for admission into

the United States as a LPR the Miami International Airport. Customs and Border Protection ("CBP") issued him a Notice to Appear in immigration court, charging him with being removable pursuant to Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, based on his conviction for a controlled substance offense. However, CBP did not take him into custody. ECF No. 7-2 at 4. Despite this conviction, CBS released Petitioner into the community without any conditions of supervision. Instead, Petitioner was ordered to appear in immigration court on May 20, 2026. ECF No. 7-2 at 1.

As his immigration court date approached, in an unusual twist, Petitioner voluntarily returned to the CBP office at the Miami International Airport to check the status of his immigration case. ECF No. 1 at 11. At that point, on April 29, 2026, CBP detained him and held him in civil immigration custody. ECF No. 1 at 11, ECF No. 7-1 at 2. Petitioner was eventually transferred to the California City Detention Facility located within this judicial district where he remains in custody. ECF No. 1. Respondent does not contend that there was any change in circumstance between 2023 and 2026 that led to Petitioner's detention.

Petitioner filed the instant petition on June 4, 2026, challenging his detention under the Due Process Clause of the Fifth Amendment. ECF No. 1. By way of relief, petitioner requests release or, in the alternative, a bond hearing before an immigration judge ("IJ") where the government must prove, by clear and convincing evidence, that he poses a danger or flight risk. Id. at 17.

Respondent asserts Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A) on account of his 2013 conviction for possession of cocaine. ECF No. 7 at 2-3, 7-3 at 6 (Rap Sheet). In support of this position, Respondent points to the July 2023 Notice to Appear charging Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II) for a controlled substance offense. ECF No. 7 at 2. However, Respondent does not discuss the fact that the government previously released Petitioner into the community after charging him under that provision. Respondent emphasizes that the Supreme Court upheld mandatory detention under Section 1226(c) as facially constitutional in Demore v. Kim, 538 U.S. 510 (2003). Id. at 4. To the extent that Petitioner challenges the applicability of 1226(c), the remedy is a Joseph hearing in

immigration court. Id. at 3 (citing Matter of Joseph, 22 I&N Dec. 799 (BIA 1999)). Next, Respondent argues that petitioner's detention is constitutional under any analytical framework, including the Mathews v. Eldridge, 424 U.S. 319 (1976), standard commonly applied by district courts within this Circuit. Id. at 6-7. Respondent explains that Petitioner's detention has a "definite" termination point when his removal proceedings conclude and that the government has a strong interest in detaining individuals like Petitioner who have serious prior criminal convictions. Id.

In a counseled reply brief, Petitioner contends that he was lawfully permitted to enter the U.S. in 2023 and that his subsequent 2026 detention without any pre-deprivation process violated his Fifth Amendment right to due process. ECF No. 11 at 1. He also points out that his conviction occurred "ten years prior to the Notice to Appear and thirteen years prior" to his detention without any new arrest or conviction. ECF No. 11 at 2. Applying the three factors under Mathews, 424 U.S. at 335, Petitioner submits that he is entitled to release. ECF No. 11 at 3-6. "Respondent has provided no evidence of an urgent circumstance or any change of circumstances to justify Mr. Belisario's detention." Id. at 5. Moreover, Petitioner's release into the interior of the United States following an inspection by CBP at a port of entry was based on an explicit determination that he was neither a security risk nor flight risk." Id. at 5.

## I. Legal Standards

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero, 534 F.3d at 1057. Thus, the undersigned begins by addressing the statutory basis for petitioner's detention.

Petitioner was detained pursuant to 8 U.S.C. § 1226(c)(1) based on his 2013 conviction for possession of cocaine. That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses, § 1226(c)(1)(A)-(E) and specifies that the Attorney General "may release" such a noncitizen "*only* if the Attorney General decides" both that doing so is necessary for witness-protection purposes

and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2). Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**II. Analysis**

The undersigned construes the petition as raising an as-applied, procedural due process challenge to the constitutionality of Petitioner's detention under § 1226(c)(1)(A). Although the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, it did so with the understanding that such detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Demore, 538 U.S. at 513, 529 n.12, 530. Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly recognized the right to bring as-applied challenges to the mandatory detention under § 1226(c): "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. Since Demore and Preap, "[c]ourts in the Ninth Circuit routinely review as-applied constitutional challenges to § 1226(c) detention." Jose G. M. L., 2026 WL 472987, at *3 (collecting cases). Thus, Demore thus does not answer the question presented in

this case. See Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *1–2 (N.D. Cal. Mar. 31, 2023) (finding likely due process violation under § 1226(c) where the petitioner had been at liberty for years before the government arrested and detained him for civil immigration purposes).

Petitioner's as-applied challenge in this case turns on whether his mandatory detention offends due process where CBP previously released him and the government re-detained him without a hearing to determine whether there was a material change in circumstance. The Court must first determine whether he has a protected liberty interest despite the mandatory nature of his detention. In this regard, the mandatory nature of 8 U.S.C. § 1226(c) detention generally, as understood by Demore, does not resolve whether Petitioner's particular circumstances give rise to a protected liberty interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Moreover, the Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty); Young v. Harper, 520 U.S. 143, 150 (1997) (applying Morrissey to pre-parole release from prison); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (finding probationers have a liberty interest). "[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person" who has never been at liberty. Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025) ("Guillermo M. R. I"). In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity "to form the [ ] enduring attachments of normal life." Morrissey, 408 U.S. at 482. In contrast, a person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause. Id.

Petitioner formed "enduring attachments of normal life" for thirteen years after sustaining the one and only criminal conviction that forms the basis for his removability. The undisputed

record in this case indicates that Petitioner did not commit any new crimes and voluntarily checked in with immigration authorities to determine his next immigration court date during this thirteen year period. Therefore, the undersigned finds that Petitioner acquired a liberty interest in his continued freedom based on his 2023 release by immigration officials. See Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, Doc. No. 8 (E.D. Cal. Feb. 5, 2026) (granting motion for temporary restraining order and habeas petition as to the petitioner's due process claim in light of prior release); Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) (similar); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025) (similar).

Next, the undersigned applies the Mathews factors to determine what process is due. As to the first factor, there is no doubt that Petitioner has a substantial private interest in maintaining his life out of immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner remained at liberty for almost three years after immigration officials charged him with being removable based on his drug conviction. Based on this span of time in which Petitioner was at liberty, the undersigned finds that the first Mathews factor substantially tilts in his favor.

Next, the risk of erroneous deprivation is extremely high in this case because Respondent does not even assert that there was a material change in circumstance between 2023 and 2026 that justifies Petitioner's detention. Petitioner was released in 2023 after inspection by immigration officials even though he was subject to 1226(c) detention then just like he is now. There is no evidence in the record nor argument from Respondent demonstrating any urgency to protect the public or prevent Petitioner's imminent flight in April 2026. Therefore, the undersigned concludes that the risk of an erroneous deprivation of liberty here is considerable where there has been no change in circumstances nor any hearing to allow a neutral arbiter to determine whether he constitutes a danger or flight risk. See Guillermo M. R. v. Kaiser, 791 F.Supp.3d 1021, 1035 (N.D. Cal. 2025) ("Guillermo M. R. II") ("allowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous deprivation."). Petitioner has not been afforded any

process to determine whether his detention is necessary for either of these purposes. Thus, the second Mathews factor tilts strongly in Petitioner's favor.

The third factor is the government's interest, including any fiscal or administrative burden that would result from additional process. The Court recognizes the government's interest in enforcing immigration laws, including § 1226(c). See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). However, the government's inaction as to Petitioner after his 2013 conviction and when he was charged with removability in 2023 somewhat undercuts the urgency of that interest. Moreover, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up). Moreover, the effort and cost required to provide Petitioner with procedural safeguards are minimal. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

Having weighed the above Mathews factors, the undersigned concludes that Petitioner had a Fifth Amendment due process right to a pre-deprivation hearing before he was detained by immigration officials without a showing of a material change in circumstance justifying his detention. See Selis Tinoco, 2025 WL 3567862 (granting motion for temporary restraining order and immediate release of the petitioner based on his likelihood of success on the merits of his due process claim); Labrador-Prato, 2025 WL 3458802 (same); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026) (same). The undersigned further finds that the remedy for the Constitutional violation in this case is Petitioner's immediate release from immigration detention. See Arzate v. Andrews, No. 1:25-cv-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL

2411010, at *1 (E.D. Cal. Aug. 20, 2025) (ordering immediate release for non-citizen who was re-detained absent a pre-deprivation hearing despite a misdemeanor arrest while on previous release). Ordering a post-deprivation hearing under such circumstances would render the due process right to a pre-deprivation hearing meaningless. See Mendoza v. Adelanto ICE Processing Center Warden, No. 5:26-cv-02144, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al., No. 25-cv-03607, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up). Moreover, the writ of habeas corpus is not only an equitable remedy at its core, but it is also designed to release individuals from custody who are detained in violation of their Constitutional rights. See United States v. Morrison, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered"). "The appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error." United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (cleaned up).

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion to proceed in forma pauperis (ECF No. 2) is granted.

2. Petitioner's motion to appoint counsel (ECF No. 3) is denied as moot in light of the Court's order dated June 25, 2026 appointing Petitioner counsel.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to immediately release Petitioner Reynaldo Eric Abdala Belisario (A#200-010-372), based on the same conditions he was subject to immediately prior to his detention on April 29, 2026. Respondent shall not impose any additional restrictions on him unless they are determined to be necessary at a future pre-deprivation/custody hearing.

3. At the time of release, Respondent be ordered to return Petitioner's documents and possessions.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which it must show by clear and convincing evidence that a material change in circumstances renders Petitioner either a danger to the community or a risk of flight.

5. The order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6. The Clerk of Court be directed to:

a. Serve the California City Detention Facility with a copy of any order of release issued in this case; and,

b. Enter judgment for Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 3, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE